IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                         Case No. 2:98-cr-162

Curtis N. Mack

<u>OPINION AND ORDER</u>

Defendant was convicted by a jury on Counts 1, 3 and 5, armed bank robbery in violation of 18 U.S.C. §2113(a) and (b); Counts 2, 4 and 6, carrying a firearm during a crime of violence in violation of 18 U.S.C. §924(c), and Counts 7-12, unarmed bank robbery in violation of 18 U.S.C. §2113(a). On September 24, 1999, defendant was sentenced to concurrent terms of incarceration of 125 months on the armed bank robbery and bank robbery counts, a consecutive term of imprisonment of 60 months on Count 2, and consecutive terms of imprisonment of 240 months on Counts 4 and 6, a total of 665 months or approximately 55 years. According to the Bureau of Prisons ("BOP"), defendant's projected release date is May 16, 2043.

On July 17, 2020, defendant filed a <u>pro se</u> motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018. <u>See</u> Docs. 99 and 101. Defendant argued that compassionate release was warranted due to the change in penalties for §924(c) offenses provided by §403(a) of the First Step Act and due to his efforts at rehabilitation. Defendant submitted a June 8, 2020, request for reduction of sentence on these grounds which he submitted to the warden and the warden's July 13, 2020, response denying his request for relief. Doc. 99-1; Doc. 101, p. 2.

Counsel was appointed to represent the defendant. On September 12, 2020, counsel filed a supplemental memorandum in

support of defendant's motion.  Counsel argued that defendant is at increased risk of serious illness from COVID-19 due to his age (48), race (African-American), gender (male) and hypertension.  On September 25, 2020, the government filed a response in opposition to the motion, arguing that the reasons offered by defendant failed to satisfy the policy statements in the United States Sentencing Guidelines ("U.S.S.G.") §1B1.13 and did not constitute extraordinary and compelling reasons for a sentence reduction.  Defense counsel filed a reply on September 27, 2020, see Doc. 112, and medical records on September 29, 2020, see Doc. 115.  Counsel argued that defendant's pulmonary (essential primary) hypertension, for which he takes prescription medication, puts him at a risk of severe illness from COVID-19.

The government filed a memorandum on September 28, 2020, arguing that defendant had not shown that he had exhausted his administrative remedies regarding his COVID-19 argument as required under §3582(c)(1)(A)(i).  Doc. 113.  The government noted that the argument concerning the risks presented by COVID-19 was raised for the first time by defense counsel in the supplemental memorandum.  On November 6, 2020, defense counsel filed a copy of the warden's October 27, 2020, denial of defendant's request for release based on COVID-19.  Doc. 116.  Having heard nothing further from the government on the exhaustion issue, the court will address the merits of defendant's motion.

I. Standards for Compassionate Release

Under §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" §3582(c)(1)(A)(i).

2

District courts have full discretion to define what constitutes an "extraordinary and compelling" reason.  <u>See</u> <u>United States v. Jones</u>, 980 F.3d 1109, 1111 (6th Cir. 2020).  The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable.  §3582(c)(1)(A).  If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]"  §3582(c)(1)(A).  The grant of compassionate release is at the discretion of the court.  <u>United States v. Kincaid</u>, 802 F. App'x 187, 188 (6th Cir. 2020).

Section 3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"  §3582(c)(1)(A).  The government correctly argues that the defendant's reasons for a sentence reduction do not fall within any of the categories discussed in the policy statements contained in U.S.S.G. §1B1.13 and Application Note 1 to that section.  However, the Sixth Circuit has held that the policy statements contained in §1B1.13 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without consulting the policy statement.  <u>See</u> <u>Jones</u>, 980 F.3d at 1111.  Therefore, the court will not base its decision on the policy statements.

<u>II. Reasons for Compassionate Release</u>

<u>A. Change in §924(c) Penalties</u>

Defendant argues that the change in the penalties for multiple

3

offenses under §924(c) implemented in §403(a) of the First Step Act may constitute an extraordinary and compelling reason for a sentence reduction. In §403(b) of the First Step Act of 2018, Congress specified that the change in penalties only applied to defendants sentenced after the effective date of the Act. Thus, the change is not retroactive. Courts have reached different conclusions as to whether the change in §924(c) penalties can constitute an extraordinary and compelling reason for a sentence reduction under §3582(c)(1)(A)(i).

Notably, in United States v. Tomes, ____ F.3d ____, 2021 WL 868555 (6th Cir. Mar. 9, 2021), the Sixth Circuit addressed the issue of whether the First Step Act change in certain mandatory minimum penalties for drug offenses under 21 U.S.C. §841, see First Step Act of 2018, Pub. L. No. 115-391, §401, 132 Stat. 5221, could constitute an extraordinary reason for compassionate release. The Sixth Circuit noted that the First Step Act explicitly provides: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act, §401(c). Noting that Tomes's sentence was imposed before the enactment of the First Step Act, the court rejected defendant's argument that the amendment could constitute an extraordinary reason for a sentence reduction in his case, stating "[w]e will not render §401(c) useless by using §3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." Id., 2021 WL 868555 at *4. Because the exact same language was used by Congress in limiting the application of the changes in §924(c) penalties, see First Step Act §403(b), the reasoning in Tomes is

4

applicable here.    The  change  in  §924(c)  penalties  is  not  an
extraordinary  reason  for  compassionate  release.

Even assuming that the First Step Act amendment of the §924(c)
penalties  can  be  an  extraordinary  reason,  the  change  in  penalties
presents no extraordinary or compelling reason for a reduction in
defendant's  case.    Any  defendant  sentenced  for  multiple  §924(c)
counts before the enactment of the First Step Act is facing similar
penalties.   See  United States v. Robinson,  No. 20-5929, 2021 WL
71545, at *2 (6th Cir. Jan. 6, 2021)(holding that district court
did  not  abuse  its  discretion  in  denying  release  based  on
consecutive §924(c) counts on the ground that such long sentences
were "commonplace" and not the kind of extraordinary and compelling
reasons that warranted a reduction).  However, at the discretion of
the  court,  this  change  in  the  law  can  be  considered  later  in
addressing whether a reduction in sentence in warranted under the
sentencing factors in §3553(a).  See United States v. Maxwell, ___
F.3d ___, 2021 WL 1046498, at *3-5 (6th Cir. Mar. 19, 2021).

B. Rehabilitation While Incarcerated

Defendant  has  presented  evidence  concerning  his  efforts  at
rehabilitation.    The  rehabilitation  of  a  defendant  is  not,  by
itself, an extraordinary and compelling reason for compassionate
release.   See 28 U.S.C. §994(t)("Rehabilitation of the defendant
alone  shall  not  be  considered  an  extraordinary  and  compelling
reason.").   However, rehabilitation may be considered along with
other  circumstances  in  deciding  whether  extraordinary  and
compelling reasons for early release exist.  See United States v.
Daley, 484 F.Supp.3d 1171, 1175 (M.D. Fla. 2020).

Defendant has presented evidence that while incarcerated, he
completed 22 courses.  Doc. 99, p. 24.  He has also worked while in

5

prison.  Doc. 99, p. 25.  Defendant obtained his barber's license; completed the Life Connections Program, an 18-month program; obtained a commercial driver's license; completed 120 hours of training as a solar panel installer; completed a drug abuse program; completed training in aerial lift safety, fire extinguishers, and occupational safety and health; completed an EPA training course in mold prevention and remediation; and viewed motivational self-help videos.  Doc. 99-3.  The evidence presented demonstrates that defendant's accomplishments while in prison and his level of rehabilitation are extraordinary.

C. Defendant's Health Concerns

Defendant, who is 48 years old, argues that his health and the fact that he is African-American mean that he is at an increased risk of serious illness from COVID-19.  According to the Centers for Disease Control ("CDC"), some racial minority groups have been disproportionately affected by COVID-19 due to factors such as poverty, discrimination, lack of access to health care, type of employment, and housing.  See https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited March 2, 2021).  There is no indication that any of these factors would make defendant any more susceptible than non-minority inmates to COVID-19 in a federal institution.

Defendant has submitted evidence that he has essential (primary) or pulmonary hypertension.  According to the CDC, persons with pulmonary hypertension are at increased risk of severe illness from COVID-19, and persons who have other forms of hypertension might be at an increased risk of serious illness from COVID-19.  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited

March 8, 2021).  Defendant takes prescription medication for this condition.

Defendant is incarcerated at Leavenworth USP, which currently houses 1,302 inmates.  The BOP reports that 11 inmates and 5 staff have currently tested positive, and 873 inmates and 5 staff have recovered.  See https://www.bop.gov/coronavirus (last visited March 22, 2021).  Although Leavenworth USP obviously had a serious COVID-19 problem in the past, the current numbers indicate that the BOP has taken significant measures to contain the spread of COVID-19 there.  The BOP is also working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to ensure that the BOP is prepared to receive and administer the COVID-19 vaccines.  The BOP reports that 132 staff and 116 inmates have been vaccinated at Leavenworth USP.  See https://www.bop.gov/coronavirus (last visited March 22, 2021).  The record does not reveal whether defendant has been infected with COVID-19 in the past or if he has been vaccinated.  The fact that defendant's hypertension places him at an increased risk of severe illness from COVID-19 is a factor warranting some weight in this case.

D. Family Support

Defendant has also submitted letters from family members and friends.  The defendant's wife (they were married in 2008) has written a letter on his behalf.  Doc. 99-3, pp. 3-7.  In this candid and detailed letter, defendant's wife provided information concerning defendant's background and his strong and weak attributes, both present and past.  She expressed her strong support for the defendant, and appears to be totally committed to his success.

The record includes a letter from the defendant's mother, who

stated that defendant was well-liked in school and attended church until age 16.  Doc. 99-3, pp. 8-9.  She acknowledged that defendant made poor decisions, and stated that he has accepted responsibility for his behavior.  One of defendant's cousins indicated in his letter that defendant has a strong support system and that people are eager to do whatever is necessary to facilitate his re-entry into society.  He stated that he would enlist defendant's services in his church's outreach program.  Doc. 99-3, pp. 10-11.  Another relative related that defendant's wife has incorporated defendant's two daughters into her family, that they are expecting their first grandchild, and that defendant is a loving husband, father, and soon-to-be grandfather.  Doc. 99-3, pp. 12-13.  Another cousin reported that defendant was his protector and confidant in school, and that he would be willing to assist defendant with any conditions of supervised release.  Doc. 99-3, p. 14.  Defendant's sister-in-law wrote about the defendant's efforts to build a strong marriage and to strengthen family connections even though he has been incarcerated.  Doc. 99-3, pp. 15-17.

The evidence includes a letter from one of defendant's friends who is a barber.  Doc. 99-3, p. 29.  This friend indicates that he owns a barbershop in Columbus, Ohio, and that he is willing to provide defendant, who has a barber's license, with a chair in his shop if he is released.  Another letter was provided by the owner of a plumbing/contracting company, who stated that he is willing to give defendant work with his company.  Doc. 99-3, p. 30.

In sum, the caring letters of friends and family members demonstrate that defendant's family and community support is unusual and extraordinary.

8

E. Conclusion

The court finds that defendant's health concerns, his multiple accomplishments in prison and significant rehabilitation efforts, and his strong family and community support, including offers of employment, are sufficient, when considered in combination, to constitute an extraordinary reason for compassionate release.

III. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The offenses in this case were serious. Defendant was convicted at trial on 3 counts of armed bank robbery, 3 firearm counts, and 6 counts of unarmed bank robbery. According to the presentence investigation report ("PSR"), defendant and an accomplice robbed the Fifth Third Bank on Main Street in Reynoldsburg, Ohio, on November 5, 1997. Defendant gave the accomplice a handgun, and the accomplice held the gun in his hand during the robbery while defendant, who wore a mask, vaulted over the counter and obtained $4,611 from the teller drawers. Defendant committed the next 2 armed robberies on December 3, 1997, and January 7, 1998, by himself. Defendant displayed a handgun during the second robbery, stating, "I don't want to have to shoot nobody." He jumped over the teller counter and removed $9,544 from the teller drawers. Defendant also showed a handgun during the third robbery. He vaulted over the teller gate and obtained $19,280 from the teller drawers. During the subsequent 6 robberies, defendant did not display a firearm. Rather, he continued to conceal his face and obtained money by jumping over the counter and removing money from the drawers. Defendant, who was described in the PSR as being 6'1" and weighing 175 pounds, apparently concluded that it was sufficiently intimidating to the tellers to invade their space by

9

jumping over the counter, and that a firearm was not needed. A total of $68,032 was taken during these robberies. Although the tellers did not sustain any physical injuries, they were emotionally traumatized.

The use of firearms during the first 3 robberies was also serious. Defendant was sentenced to 5 years consecutive on the first §924(c) count and 20 years consecutive on the second and third §924(c) counts (45 years). Together with the 125-month sentence on the robbery counts, this resulted in a total sentence of 55 years and 5 months. In the First Step Act, Congress re-evaluated what would constitute an adequate penalty for multiple §924(c) counts. Under the new law, defendant would have received three 5-year consecutive terms on the §924(c) counts (15 years), resulting in a total sentence of 25 years and 5 months. If good time credit is considered, this would reduce the sentence to approximately 21 years and 8 months. Defendant has now served approximately 22-1/2 years. Considering Congress's current view of the type of penalty which is adequate to reflect the seriousness of §924(c) offenses, the reduced sentence requested by defendant would be sufficient to address the seriousness of the offenses for which he was convicted.

As to the history and characteristics of the defendant, at the time of his convictions for the offenses in this case, defendant was in Criminal History Category III. Defendant's prior record includes a petit theft conviction in 1992, at the age of 22, and disorderly conduct in 1995. Defendant was arrested on October 17, 1995, for attempted bank robbery. On December 16, 1996, he was sentenced in state court to a term of 5 years probation. This lenient sentence was insufficient to deter him from engaging in

10

additional criminal activity. At the age of 26, defendant committed the offenses in the instant case. After committing those bank robberies, defendant committed another bank robbery in Gahanna, Ohio, on May 16, 1998, and was prosecuted for that robbery in state court. Defendant was sentenced to a term of incarceration of 5 years, to run concurrently with the federal sentence.

The PSR indicates that defendant was an only child and had a good childhood. Both his parents worked. Defendant graduated from high school and attended college part time from 1990-1993. Defendant's mother informed the probation officer that when defendant left college in 1993 and was unsuccessful in obtaining a job with Anheuser Busch, where she worked, he became depressed. She felt that defendant got involved with the wrong people. Defendant stated that he began using marijuana in 1993, and that this may have contributed to his criminal activities. As discussed above, defendant has presented evidence of his rehabilitation while incarcerated, family support, and employment prospects. Defendant plans to live with his wife following his release. The probation officer has reported to the court that, based on his interview with defendant's wife and a positive home inspection, this living situation appears stable.

The court concludes that a reduced sentence, when combined with a lengthy new period of supervised release with conditions, would be sufficient to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from more crimes by the defendant. Defendant has served over 22 years in prison, a much more severe sentence than the penalties imposed for his other convictions. Defendant is now 48 years old, and appears to be much more mature than he was when he

11

committed the offenses in this case. His extraordinary efforts towards rehabilitation and his good conduct while in prison indicate that his risk of committing new offenses is low. Any concern raised by the seriousness of the offenses of conviction and any risk of recidivism can be addressed by the imposition of an additional significant term of supervised release.

The court concludes that the §3553(a) factors weigh in favor of granting defendant's motion for a reduced sentence.

IV. Conclusion

In accordance with the foregoing, defendant's motion for compassionate release (Doc. 99) is granted. The terms of incarceration previously imposed on Counts 1 through 12 the indictment are hereby reduced to terms of time served. The court orders that the defendant shall be released from custody. This order is stayed for fourteen days from the date of this order to facilitate the BOP's ability to quarantine defendant to protect the community from the potential spread of COVID-19.

The court will also impose a new term of supervised release of 10 years, which will commence upon defendant's release from incarceration. The standard conditions in this district will apply. Defendant shall also be subject to the following special conditions:

> 1) The defendant shall participate in a program of testing and treatment for alcohol and controlled substance abuse, as directed by the U.S. Probation Office, until such time as the defendant is released from the program by the probation office. The defendant will make a co-payment for treatment services not to exceed $25.00 per month, which is determined by the defendant's ability to pay.

> 2) The defendant shall seek and maintain full-time employment.

3) The defendant shall pay the balance remaining on his restitution obligation of $68,032.00 and the special assessment fee of $1,200.00.  Defendant shall make monthly payments $100.00 towards this restitution obligation.  Monthly payments shall commence 90 days after the defendant's release.

Following the end of this new 10-year term of supervised release, the defendant shall begin to serve the concurrent terms of supervised release previously imposed in this case.

Defendant is instructed that he must report to the probation office reside within 72 hours of his release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different time frame.  Defendant shall call the Probation Office at (614)-719-3100 to receive instructions on how to report.


Date: March 23, 2021              s/James L. Graham
                           James L. Graham
                           United States District Judge

13